Anahit Davtyan (SBN 335263)
1808 14th Street,
Sacramento, CA 95811
(916) 385-3284
Anahit.Davtyan.1994@gmail.com

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United Auto Workers Local 2350,<br><br>    Plaintiff,<br><br>    v.<br><br>California State University Employees Union, SEIU Local 2579,<br><br>    Defendant. | Case No.<br><br>**Complaint to Compel Arbitration** |

The Plaintiff United Auto Workers Local 2350 ("Union") by its attorney Anahit Davtyan alleges as follows:

### JURISDICTION AND VENUE

1.    The Court possesses jurisdiction pursuant to Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185(a).

2.    Venue is appropriate in this District because the Union maintains its principal office in the District and the Union's duly authorized officers and agents are engaged in representing or acting for employee members in this District. 29 U.S.C. § 185(c).

### PARTIES

3.    The Union is the exclusive representative for the bargaining unit comprised of all non-supervisory, non-confidential employees of the Defendant California State University Employees Union, SEIU Local 2579 ("Employer").

4.    The Employer is a public-sector labor organization that represents employees at

1                                                                                         Complaint

the California State University.

## FACTUAL ALLEGATIONS

### The Collective Bargaining Agreement

5.      The Employer and the Union are parties to a collective bargaining agreement ("CBA") that has a three-year term starting on December 30, 2023 and ending on December 31, 2026.

6.      Article 5, Section 11 of the CBA sets forth the probationary period for new hires and provides, in relevant part:

**SECTION 11 — PROBATIONARY PERIOD**
All exempt employees shall be on probation for a period of one (1) year from the date of his/her initial employment. All non-exempt employees shall be on probation for a period of six (6) months from the initial employment.

[…]

(B) A probationary employee may be rejected from probation at any time during the probationary period and no negative comments shall be made on any reference checks. A rejection in probation is not a disciplinary action pursuant to Article 8, Section 1, and may not be grieved.

(C) Failure to terminate a probationary employee prior to the end of the probationary period shall give the employee permanent status in his/her job classification.

(See Exhibit A, Collective Bargaining Agreement.)

7.      Article 10, Section 5 of the CBA sets forth the grievance process and provides:

**SECTION 5 — PROCEDURE**
(A) A grievance filed at STEP 2 (Formal STEP) of this procedure shall be presented in writing. The statement need not be in any particular form but shall set forth the facts of a dispute in clear and concise language in sufficient detail to enable the Parties to understand the nature of the grievance, including the applicable contract provisions, work rules, and/or NLRA unfair labor practice provisions.

(B) STEP 1 – Informal Step
        (1) A grievance shall be discussed informally with the immediate supervisor or manager who has the authority to resolve the grievance. The supervisor or manager shall have ten (10) days in which to investigate the dispute and respond to the aggrieved employee and/or designated representative.

(C) STEP 2 – Formal Step
        A grievance must be presented in writing within thirty (30) days of when the

2                                                                                    Complaint

employee or the Union had learned or may reasonably have been expected to have learned of its cause or within 20 days of receipt of an unfavorable response at Step 1. Presentation shall consist of delivery of the written grievance to the General Manager of CSEA, except that in cases where the grievant works for an affiliate organization, the grievance shall be presented to the administrator of that affiliate organization at Step 2. The General Manager or the affiliate administrator shall within fifteen (15) days of receipt of the grievance, investigate the grievance, and give his/her decision in writing to the grievant and the Union. Prior to rendering a STEP 2 decision, the General Manager or the affiliate administrator or his/her designee, upon request by the Union, shall meet with the grievant and his/her representative either personally or by telephonic conference.

(D) STEP 3 – Arbitration
A grievance may be appealed to Arbitration by the Union within fifteen (15) days of either (1) receipt of an unfavorable response by the aggrieved employee(s) or the Union at STEP 2 or if no timely response is made at STEP 2, within thirty (30) days after the grievance was presented at STEP 2. Such appeal shall consist of submitting a written demand to the General Manager of CSEA or to the appropriate affiliate administrator. Any appeal to Arbitration by the Union shall be copied to the General Manager of CSEA.

(See Exhibit A, Collective Bargaining Agreement.)

8.      Article 11 of the CBA sets forth the arbitration process and provides, in relevant part:

**ARTICLE 11 – ARBITRATION**

**SECTION 1 — PERMANENT PANEL**
The Parties agree that, when available, the following individuals shall serve as Arbitrators with respect to any and all disputes which may arise between the parties.
- John Kagel
- Catherine Harris
- Tom Angelo
- Douglas Collins
- Matthew Goldberg
- Carol Vendrillo
- John LaRocco
- Barry Winograd
- Michael Rappaport

**SECTION 2 — SELECTION**
The Parties shall select from the list of permanent Panelists listed in Section 1 (above). The selection shall be made by each Party alternately striking from the list until one name remains. The striking shall occur within ten (10) working days of receipt, by the General Manager or the appropriate affiliate administrator, of the Union's written demand to choose an arbitrator. Alternatively, by mutual agreement, the Parties may select an

Complaint

individual arbitrator or by using the alternate striking method, from a list of available arbitrators provided by the State Mediation and Conciliation Service.

**SECTION 3 — EXPEDITED ARBITRATION**

(A) The Union may elect to initiate Arbitration pursuant to the Expedited Arbitration rules of any grievance except a grievance concerning disciplinary action, discharge, layoff, or other matter involving termination of employment, provided the requirements of Article 10 (Grievance Procedure) are satisfied.

(B) The Union and CSEA or the appropriate affiliate administrator may initiate an expedited Arbitration as provided in Article 10, Section 2 (D).

(C) In an Expedited Arbitration proceeding the Arbitrator shall make his/her findings and award immediately upon the conclusion of the hearing.

[…]

(See Exhibit A, Collective Bargaining Agreement.)

**Employer's Breach and Refusal to Arbitrate**

9.    On January 6, 2025, the Employer hired Kshatriya Millick as an exempt employee.

10.    Pursuant to Article 5, Section 11 of the CBA, Millick began her one-year probationary period on January 6, 2025. (See Exhibit A, Collective Bargaining Agreement.)

11.    On January 6, 2026, the Employer's President, Catherine Hutchinson, issued a letter to Millick stating that the Employer "is extending [Millick's] probationary period by 180 days." (See Exhibit B, Employer Letter Extending Probation.)

12.    On January 8, 2026, Union Steward Andrew Heller wrote a letter to President Hutchison grieving the extension of the probationary period. This step-one grievance states that "the CBA does not have a procedure for extending the probationary period" and concludes that, because one year has passed without this Millick being terminated, Millick "has passed probation and has attained permanent status." (See Exhibit C, Union Step One Grievance.)

13.    On April 13, 2026, President Hutchison wrote a letter to Union Steward Heller denying the step-one grievance. The unfavorable response states that Millick's "probationary period was extended appropriately and in accordance with the Agreement. Her hire date is

4

January 6, 2026, and she was notified of the extension of her probationary period within that timeframe." (See Exhibit D, Employer Step One Unfavorable Response.)

14.     On April 16, 2026, Union President Nicholas Gleichman responded to President Hutchinson's unfavorable response by filing a step-two grievance. This step-two grievance states that "The fact that the extension was sent within a year is not relevant because there is no provision in the contract that allows management to unilaterally extend probation." (See Exhibit E, Union Step Two Grievance.)

15.     On April 16, 2026, President Hutchinson, without meeting with the Union, denied the step-two grievance. This denial states that "the grievance is denied as untimely" because it was filed "more than three (3) months" after "the Union knew or reasonably should have known of the matter giving rise to the grievance." (See Exhibit F, Employer Step Two Denial.)

16.     On April 16, 2026, Union President Nicholas Gleichman responded to President Hutchinson's denial of the step-two grievance by requesting that she "please go ahead and move this to arbitration." (See Exhibit G, Union First Arbitration Demand.)

17.     On April 21, 2026, counsel for the Union, Matthew Bruenig, submitted a written demand to CSEA General Manager Lao Sok and President Hutchinson formally appealing the step-two grievance denial to arbitration pursuant to Article 10, Section 5(D) of the CBA. Bruenig also requested an expedited arbitration pursuant to Article 11, Section 3 of the CBA. (See Exhibit H, Union Second Arbitration Demand.)

18.     On April 22, 2026, counsel for the Employer, Kerianne Steele, replied to this arbitration demand, stating, in relevant part:

> We received UAW's arbitration demand. The grievance is not arbitrable. No grievance was presented to CSUEU at the time the employee's probation was extended. Probationary releases are not grievable. We do not agree to expedited arbitration either.

(See Exhibit I, Employer First Refusal to Arbitrate.)

5

Complaint

19.    On April 22, 2026, Bruenig replied to Steele, asking if she would "state clearly whether the employer is refusing to arbitrate." (See Exhibit J, Union Arbitration Clarification.)

20.    On April 29, 2026, Steel replied to Bruenig, stating, in relevant part:

CSUEU does not agree to arbitrate. UAW abandoned the prior grievance. That matter is closed. The outcome of abandonment/case closure is that Kshatriya's probation was extended by 180 days.

(See Exhibit K, Employer Second Refusal to Arbitrate.)

### COUNT I

21.    The Union realleges and incorporates by reference all allegations contained in Paragraphs 1 through 20 as though fully set forth herein.

22.    By refusing to arbitrate the grievance over the extension of Millick's probationary period, the Employer violated Article 10, Section 5(D) and Article 11 of the CBA.

23.    By refusing to participate in an expedited arbitration, the Employer violated Article 11, Section 3 of the CBA.

### PRAYER FOR RELIEF

Wherefore, the Union prays that, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, this Honorable Court issues judgment as follows:

1.  A declaration that the Employer has violated the terms of the CBA by the conduct described herein;

2.  For the Employer to specifically perform by arbitrating the grievance described herein pursuant to the CBA's arbitration process;

3.  For costs and attorneys' fees of suit incurred;

4.  For such other and further relief at law or in equity as the Court may deem appropriate and proper.

///

6                                                                    Complaint

Dated: May 7, 2026

Respectfully Submitted,
Anahit Davtyan

By: _____
Attorney for Plaintiff

Complaint