Anahit Davtyan (SBN 335263)
1808 14th Street,
Sacramento, CA 95811
(916) 385-3284
Anahit.Davtyan.1994@gmail.com
Matthew Bruenig (DC Bar No. 1045571)
124 4th St,
Stamford, CT 06905
(857) 540-1205
matthewbruenig@gmail.com
*Attorneys for Plaintiff United Auto Workers Local 2350*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United Auto Workers Local 2350, <br><br> Plaintiff, <br><br> v. <br><br> California State University Employees Union, SEIU Local 2579, <br><br> Defendant. | Case No. 2:26-cv-01794-WBS-CKD <br><br> **Plaintiff's Opposition to Defendant's Motion to Dismiss** <br><br> **Date: August 17, 2026** <br><br> **Time: 1:30 PM** <br><br> **Judge: Hon. William B. Shubb** <br><br> **Courtroom: 5** |

**I. Introduction**

The Motion to Dismiss filed by the California State University Employees Union ("Employer") (Dkt. 12, hereinafter "Mot. to Dismiss") largely recapitulates the argument in its earlier Opposition to the Motion to Compel Arbitration (Dkt. 9, hereinafter "Opp'n to Mot. to Compel"). In both documents, the Employer argues that it is not required to arbitrate the dispute over its unilateral extension of Kshatriya Millick's ("Millick") probationary period because the January 8, 2026 letter sent by the United Auto Workers Local 2350 ("Union") objecting to this

extension did not constitute a Step One grievance as required by the parties' collective bargaining agreement ("CBA").

As already noted in the Union's Reply to the Opposition to the Motion to Compel Arbitration (Dkt. 10, hereinafter "Reply to Opp'n to Mot. to Compel"), the Employer's argument about the Step One grievance raises a procedural arbitrability issue that must be resolved by an arbitrator, not this Court. This argument is also without merit as the Union's letter clearly constituted a Step One grievance within the meaning of the CBA.

**II. Statement of Facts**

The relevant facts are undisputed by the parties.

On January 6, 2026, President Hutchinson unilaterally extended the probationary period of Millick (Mot. to Dismiss at 1).

On January 8, 2026, Union Steward Andrew Heller sent a letter to President Hutchinson concerning the extension of the probationary period (Mot. to Dismiss at 1-2). The letter states that "the CBA does not have a procedure for extending the probationary period" and concludes that, because one year has passed without Millick being terminated, Millick "has passed probation and has attained permanent status." (Declaration of Nicholas Gleichman, Dkt. 1, Ex. C).

On April 13, 2026, President Hutchinson wrote a letter to Union Steward Heller disagreeing that the Employer's unilateral extension of Millick's probationary period violated the CBA (Mot. to Dismiss at 2). The unfavorable response states that Millick's "probationary period was extended appropriately and in accordance with the Agreement. Her hire date is January 6, 2025, and she was

notified of the extension of her probationary period within that timeframe." (Declaration of Nicholas Gleichman, Dkt. 1, Ex. D).

On April 16, 2026, Union President Nicholas Gleichman responded to President Hutchinson's unfavorable response (Mot. to Dismiss at 2). Gleichman's response states that "there is no provision in the contract that allows management to unilaterally extend probation" and asks to "elevate *this grievance* to the next level." (Declaration of Nicholas Gleichman, Dkt. 1, Ex. E, emphasis added).

On April 16, 2026, President Hutchinson, without meeting with the Union, denied Gleichman's Step Two grievance (Mot. to Dismiss at 2). This denial states that "the grievance is denied as untimely" because it was filed "more than three (3) months" after "the Union knew or reasonably should have known of the matter giving rise to the grievance." (Declaration of Nicholas Gleichman, Dkt. 1, Ex. F).

On April 16, 2026, Union President Nicholas Gleichman responded to President Hutchinson's denial of the Step Two grievance by requesting that she "please go ahead and move this to arbitration." (Declaration of Nicholas Gleichman, Dkt. 1, Ex. G).

On April 21, 2026, counsel for the Union, Matthew Bruenig, submitted a written demand to CSEA General Manager Lao Sok and President Hutchinson formally appealing the Step Two grievance denial to arbitration pursuant to Article 10, Section 5(D) of the CBA (Mot. to Dismiss at 2). Bruenig also requested an expedited arbitration pursuant to Article 11, Section 3 of the CBA. (Declaration of Nicholas Gleichman, Dkt. 1, Ex. H).

Opposition to Motion to Dismiss

On April 22, 2026, counsel for the Employer, Kerianne Steele, replied to this arbitration demand, stating, in relevant part: "We received UAW's arbitration demand. The grievance is not arbitrable. No grievance was presented to CSUEU at the time the employee's probation was extended. Probationary releases are not grievable. We do not agree to expedited arbitration either." (Mot. to Dismiss at 3; Declaration of Nicholas Gleichman, Dkt. 1, Ex. I).

On April 22, 2026, Bruenig replied to Steele, asking if she would "state clearly whether the employer is refusing to arbitrate." (Mot. to Dismiss at 3; Declaration of Nicholas Gleichman, Dkt. 1, Ex. J).

On April 29, 2026, Steele replied to Bruenig, stating, in relevant part: "CSUEU does not agree to arbitrate. UAW abandoned the prior grievance. That matter is closed. The outcome of abandonment/case closure is that Kshatriya's probation was extended by 180 days." (Mot. to Dismiss at 3; Declaration of Nicholas Gleichman, Dkt. 1, Ex. K).

**III. Argument**

Because the Employer's Motion to Dismiss largely recapitulates the Employer's Opposition to the Motion to Compel Arbitration, the Union's response to this Motion to Dismiss is largely a recapitulation of its argument in its Motion to Compel Arbitration (Dkt. 6, hereinafter "Mot. to Compel") and its Reply to the Opposition to the Motion to Compel Arbitration (Dkt. 10, hereinafter "Reply to Opp'n to Mot. to Compel").

The Union's complaint contains undisputed factual allegations that the parties have a CBA containing an arbitration

Opposition to Motion to Dismiss

provision that covers the subject matter of the parties' dispute over the extension of Millick's probationary period (Dkt. 1). The Employer's refusal to abide by this provision is based solely on its contention that Steward Heller's January 8, 2026 letter did not constitute a Step One grievance, an argument that is both legally irrelevant and without merit. Thus, the Union's complaint states a claim upon which relief can be granted under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) and the Employer's motion to dismiss should be denied.

**A. Procedural Arbitrability Issues Must Be Resolved by Arbitrators Not Courts**

The Supreme Court distinguishes between "substantive arbitrability" issues, which are for courts to decide, and "procedural arbitrability" issues, which are for arbitrators to decide. *Howsam v. Dean Witter Reynolds*, Inc., 537 U.S. 79, 84-85 (2002). In *Howsam,* the Court defined "procedural arbitrability" as including allegations of waiver, delay, time limits, notice, laches, estoppel, other like defenses to arbitrability, and "***whether a condition precedent to arbitrability has been fulfilled.***" *Id.* (Emphasis added).

Pursuant to this distinction, once a court determines "the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964) (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration).

Opposition to Motion to Dismiss

**B. Whether Heller's January 8 Letter Constitutes a Step One Grievance is a Procedural Arbitrability Issue**

The Employer does not dispute that the arbitration provision in the parties' CBA covers the subject matter of probationary period extensions. Its sole contention is that Heller's January 8 letter did not constitute a Step One grievance and that therefore a condition precedent to arbitrability was not fulfilled (Mot. to Dismiss at 3-4). This is precisely the sort of procedural arbitrability issue that is reserved for arbitrators, not courts. *Howsam,* 537 U.S. at 84-85 (2002).

The Employer's effort to explain why the standard procedural/substantive distinction does not apply to this case is a mischaracterization of the case law.

The Employer starts by writing that: "Although procedural questions are generally reserved for the arbitrator, that principle applies only after it has been established that the parties are obligated to submit **the dispute** to arbitration." (Mot. to Dismiss at 3, emphasis added). For that proposition, the Employer cites to *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964), but the actual quote from that case is: "Once it is determined ... that the parties are obligated to submit **the subject matter of a dispute** to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Id.* (emphasis added). The subject matter of the parties' dispute is the unilateral extension of Millick's probationary period. Whether the January 8 letter constituted a Step One grievance is a procedural question that has grown out of the substantive dispute

Opposition to Motion to Dismiss

over the probationary period extension. The Employer appears to have dropped the phrase "subject matter" from its paraphrasing of *John Wiley & Sons* in an effort to create ambiguity where there is none.

Next, the Employer states that "the Supreme Court has distinguished between procedural questions arising within arbitration and threshold questions concerning whether the parties agreed to arbitrate in the first instance." For this proposition, it cites *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002), a case in which the employer argued that it could not be compelled to arbitrate because the arbitration demand was untimely. The Court rejected the employer's argument and explained that "in the absence of an agreement to the contrary, issues of substantive arbitrability ... are for a court to decide and issues of procedural arbitrability ... are for the arbitrators to decide." *Id.* The procedural question at issue in *Howsam* did not arise within arbitration. It was a time limit question that was being litigated before arbitration ever began. Just as in *Howsam*, the Employer's argument regarding the January 8 letter pertains to whether "conditions precedent to an obligation to arbitrate have been met," the parties' CBA does not reserve that question for the courts, and therefore it is an issue for an arbitrator to decide. *Id.*

Lastly, the Employer states that: "Whether the parties agreed to arbitrate a particular dispute remains a question for judicial determination." For this proposition it cites to *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986), a case in which the employer argued that the parties'

Opposition to Motion to Dismiss

arbitrability provision did not cover disputes over layoffs. *AT&T* is thus a case about substantive arbitrability, not procedural arbitrability. If the Employer were arguing that the parties' arbitration provision does not cover probationary period extensions, then that would be a substantive question for the court, just like in *AT&T.* But it has not made any such argument.

**C. Heller's January 8 Letter Constitutes a Step One Grievance**

The Court should never reach the question of whether Heller's January 8 letter constitutes a Step One grievance under Article 10, Section 5 of the CBA. But if it does reach that question, it should decide that Heller's January 8 letter was a Step One grievance.

Article 10, Section 5(B) of the CBA describes Step One grievances this way:

(B) STEP 1 – Informal Step

(1) A grievance shall be discussed informally with the immediate supervisor or manager who has the authority to resolve the grievance. The supervisor or manager shall have ten (10) days in which to investigate the dispute and respond to the aggrieved employee and/or designated representative.

(Declaration of Nicholas Gleichman, Dkt. 1, Ex. A).

Heller's January 8 letter far exceeds the requirements of the CBA for a Step One grievance. The letter, which was sent on the Union's official letterhead and copied to Union President Gleichman, states (1) that "the CBA does not have a procedure for extending the probationary period of UAW employees," (2) that "Article 5, Section 11C" of the CBA specifically provides that

8                                  Opposition to Motion to Dismiss

any probationary employee not terminated before the end of the probationary period must be granted "permanent status", (3) that the Union's view is that Millick "has passed probation and has attained permanent status," and that (4) the Union is "requesting that a followup communication be provided to Ms. Millick indicating that her probation has been passed." (Declaration of Nicholas Gleichman, Dkt. 1, Ex. C).

The Employer's only direct argument for why the January 8 letter does not constitute a grievance is that it was "informal correspondence" that does not contain the word "grievance" in it (Mot. to Dismiss at 4-5). This argument is completely detached from the parties' CBA, which specifically describes Step One as the "Informal Step" and nowhere requires that the word "grievance" be used while discussing a grievance. *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582-583 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.")

The Employer also contends that the Union's behavior indicates that it did not believe the January 8 letter was a Step One grievance. In addition to being irrelevant, this contention is clearly wrong. In the Employer's own telling of the facts, on January 8, Steward Heller submitted his letter about the probationary extension, on April 13, President Hutchinson submitted her unfavorable response disagreeing with Heller, and then on April 16, Union President Gleichman responded to President Hutchinson with a letter requesting to "elevate *this*

9                                        Opposition to Motion to
                                                          Dismiss

*grievance* to the next level." (Mot. to Dismiss at 2, emphasis added). "This grievance" is clearly a reference to the January 8 letter and the request to "elevate this grievance to the next level" is clearly a request to elevate the grievance to Step Two. On that same day, April 16, President Hutchinson denied this Step Two grievance, and President Gleichman immediately responded by requesting to "please go ahead and move this to arbitration." (Declaration of Nicholas Gleichman, Dkt. 1, Ex. G). The only way this request makes sense is if Mr. Gleichman believed he had just filed a Step Two grievance earlier that day, which itself only makes sense if he believed the January 8 letter was a Step One grievance.

The Employer simply omits President Gleichman's April 16 reference to "this grievance" in its argument, claiming instead that the first time anyone called it a grievance was on April 21 (Mot. to Dismiss 4). The Employer then advances an unsupported theory of President Gleichman's mental state based on this false timeline (Mot. to Dismiss at 4-5).

Other than irrelevantly and falsely claiming that the Union never referred to the January 8 grievance as a grievance until April 21, the Employer's only other argument on this point is that President Gleichman should be understood as not believing the January 8 letter was a Step One grievance because he concurrently raised waiver and continuing-violation arguments (Mot. to Dismiss at 4-5). The Employer apparently believes raising those arguments is inconsistent with the claim that the January 8 letter was a Step One grievance. But they are not inconsistent.

Opposition to Motion to Dismiss

**D. The Employer Has No Other Independent Arguments**

The Employer ostensibly makes two more arguments in its Motion to Dismiss, but both are fully derivative of its argument about the January 8 letter.

The Employer argues that the Union "fails to plausibly allage [sic] a contractual right to arbitration." (Mot. to Dismiss at 6). But this argument ends up turning entirely on the premise that the January 8 letter was not "a properly initiated grievance." *Id.*

The Employer also argues that the April 16, 2026 Step Two grievance was untimely because it was filed more than three months after Millick's probationary period was extended on January 6. *Id.*

The problem with this argument is that Article 10, Section 5(C) of the CBA provides that a Step Two grievance may be filed "within thirty (30) days of when the employee or the Union had learned or may reasonably have been expected to have learned of its cause or ***within 20 days of receipt of an unfavorable response at Step 1.***" (Declaration of Nicholas Gleichman, Dkt. 1, Ex. A, emphasis added). The unfavorable response at Step 1 was issued by President Hutchinson on April 13 while President Gleichman's Step Two grievance was filed within 3 days of receipt on April 16, which is well within the 20-day contractual timeline (Mot. to Dismiss at 2).

For this second argument, the Employer claims it is making an argument in the alternative that works "even assuming, arguendo, that the January 8, 2026 correspondence constituted a Step One grievance." (Mot. to Dismiss at 6). But the Employer

Opposition to Motion to Dismiss

loses the thread just two paragraphs later when it acknowledges that the Union can clearly defeat this timeliness argument by pointing out that the April 16 Step Two grievance took place just three days after the April 13 unfavorable response. *Id.* In response to this anticipated counter, the Employer argues that the April 13 unfavorable response was not actually an unfavorable response because the January 8 letter was not actually a Step One grievance. (Mot. to Dismiss at 6-7). So, what started as an argument that is supposedly independent of the premise that the January 8 letter was not a Step One grievance ended up being totally derivative of that premise.

Because both arguments are dependent on the Employer's claims about the January 8 letter, they fail for the reasons already discussed above.

**IV. Conclusion**

For the foregoing reasons, the Union respectfully requests that the Court deny the Employer's Motion to Dismiss.


Dated: June 22, 2026                    Respectfully Submitted,
                                        /s/ Anahit Davtyan
                                        /s/ Matthew Bruenig
_____                 Attorneys for Plaintiff

Opposition to Motion to Dismiss