UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED AUTO WORKERS LOCAL 2350,

Plaintiff,

v.

CALIFORNIA STATE UNIVERSITY EMPLOYEES UNION, SEIU LOCAL 2579,

Defendant.

No. 2:26-cv-01794 WBS CKD

MEMORANDUM AND ORDER RE: MOTION TO COMPEL ARBITRATION

----oo0oo----

Plaintiff moves the court to compel defendant to arbitrate this dispute pursuant to the parties' collective bargaining agreement.

## I. Factual Background

On January 5, 2025, California State University Employees Union, SEIU Local 2579 (the "Employer") hired Ms. Kshatriya Millick. (Docket No. 6-2 at 2.) In accordance with the parties' collective bargaining agreement (the "CBA"), Millick

began her one-year probationary period that same day. (Id.)

On January 6, 2026, the Employer's President informed Millick via letter that the Employer would be extending her probationary period by 180 days. (See id.) Two days after that, plaintiff's Union Steward wrote a letter to the President "grieving the extension of [Millick's] probationary period." (Id.) Plaintiff alleges that the letter constituted a "step-one grievance" which rested upon the grounds that "the CBA does not have a procedure for extending the probationary period," so Millick's probationary period was improperly extended. (See id.)

Approximately three months later, the Employer's President responded to plaintiff's Union Steward by letter, in which she denied the step-one grievance. (See id.) She stated that Millick's probation period was appropriately extended pursuant to the terms of the CBA. (See id.)

On April 16, 2026, plaintiff's President sent via email a "step-two grievance" stating that, among other things, "there is no provision in the [CBA] that allows management to unilaterally extend [an employee's] probation[ary]" period. (See id. at 2-3.) The Employer's President denied the "step-two grievance" that same day, stating that it was "untimely." (Id. at 3.)

The CBA provides that, if a dispute is not resolved at either step one or step two, an employee may escalate to arbitration. (Docket No. 1-3 at 46.) Plaintiff so endeavored, but defendant declined to progress to arbitration on the grounds that "[n]o grievance was presented to [it] at the time

[Millick's] probation was extended," and, correspondingly, there was no conflict to arbitrate. (Docket No. 6-2 at 3.) Defendant subsequently reiterated via email that it "does not agree to arbitrate," and that, from its perspective, the "matter is closed." (Id. at 4.)

The parties agree that this court, as opposed to an arbitrator, must decide the threshold question of whether their dispute must be sent to arbitration. (See id.; Docket No. 6.)

## II. Whether Plaintiff Properly Followed the Grievance Procedure

Defendant's chief contention is that plaintiff did not follow the grievance procedure set forth in Article 10, Section 5 of the CBA, so there is no matter left to arbitrate. (See Docket No. 9.) Article 10, Section 5 of the CBA sets forth a two-step procedure for initiating a grievance. (See Docket No. 1-3 at 46.) This section also provides that if the employee's grievance is not resolved at these steps, she may proceed to arbitration. (See id.)

### a. Step One

Defendant argues that the January 8, 2026, letter from plaintiff's Union Steward to defendant did not "constitute[] a formal Step One grievance under Article 10" because it "did not identify itself as a grievance, invoke Article 10, reference any grievance step, request advancement through the contractual grievance procedure, or mention arbitration." (Docket No. 9 at 7.) Defendant also argues that the January 8, 2026, letter failed to "objectively notify CSUEU that UAW intended to trigger Article 10's grievance timeliness or preserve arbitration

rights concerning the probationary extension." (See id.)

This argument is unavailing. Article 10, Section 5 of the CBA does not require a grievance at step one to expressly identify itself as such or make reference to any contractual provision. (See Docket No. 1-3 at 46.) To the contrary, the CBA expressly refers to step one as an "Informal Step." (See id.) All that Article 10, Section 5 mandates is that a step one grievance be "discussed informally with . . . [someone] who has the authority to resolve the grievance." (Id.)

Plaintiff has fulfilled this barebones requirement. The January 8, 2026, letter from plaintiff's Union Steward to defendant's President provides the grounds for the grievance -- that Millick's probationary period was improperly extended by 180 days --, points out that "the CBA does not have a procedure for extending the probationary period of [plaintiff's] employees," and observes that, pursuant to a different section of the CBA, Millick's probationary period had ended and she had thus "attained permanent status." (Id. at 180.) This email more than "informally" "discusse[s]" Millick's grievance with an individual who has authority to resolve it. (Id. at 46.)

b. Step Two

As for step two, defendant argues that plaintiff's April 16, 2026, email does not constitute a procedurally sound step two grievance because it failed to identify the April 8, 2026 email as a step one grievance and did not identify itself as a step two grievance. (See Docket No. 9 at 8.)

The requirements for a grievance at step two are more

involved than those at step one, but by no means do they command the level of particularity defendant claims. The relevant provision of the CBA sets forth only that a grievance at step two be presented in writing and "set forth the facts of a dispute in clear and concise language in sufficient detail to enable the Parties to understand the nature of the grievance." (Docket No. 1-3 at 46.) As with a step one grievance, the CBA does not mandate that a step two grievance be explicitly identified as such. (See id.)

The April 16, 2026, email easily fulfills the CBA's step two requirements. Indeed, the email's subject line is titled "Probation Grievance," which undercuts defendant's insinuations that that it did not know plaintiff was attempting to invoke the grievance procedure. (Id. at 184.) The email also reiterates the timeline and content of communications between the parties regarding Millick's probationary period; identifies the provisions of the CBA the extension of Millick's probationary period allegedly transgressed; and informs defendant of plaintiff's intent to pursue National Labor Relations Board remedies. (See id.) It is difficult to see how the email failed to enable defendant to "understand the nature of [plaintiff's] grievance." (Id. at 46.)

III. Conclusion

Plaintiff adequately followed the grievance procedure set forth in the CBA. Accordingly, pursuant to the CBA, the matter must be referred to arbitration.

IT IS HEREBY ORDERED that plaintiff's motion to compel

arbitration (Docket No. 6) be, and the same hereby is, GRANTED.[1] This action is hereby STAYED pending arbitration. The court DEFERS ruling on defendant's motion to dismiss (Docket No. 12) while the case is stayed. See, e.g., Wright v. Lyft, Inc., No. 14-cv-421 MJP, 2015 WL 12977403, at *3 (W.D. Wash. Jan. 6, 2015).

The Clerk of Court shall close this file administratively, subject to it being reopened upon the application of either party after arbitration has been fully completed.

Dated: August 17, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[1] The court does not opine on plaintiff's request that arbitration be expedited because "procedural" matters regarding arbitration are "presumptively not for the judge, but for an arbitrator, to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (emphasis in original).